## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOUNT CARMEL HEALTH SYSTEM,** )<br>**6150 East Broad Street** )<br>**Columbus, OH 43213** )<br> )<br>**MERCY MEDICAL CENTER – SIOUX CITY,** )<br>**801 5th Street** )<br>**Sioux City, IA 51101** )<br> )<br>**SAINT AGNES MEDICAL CENTER, FRESNO,** )<br>**1303 E. Herndon Avenue** )<br>**Fresno, CA 93720** )<br> )<br>**MOUNT CARMEL ST. ANN'S,** )<br>**6150 East Broad Street** )<br>**Columbus, OH 43213** )<br> )<br>**ST. JOSEPH REGIONAL MEDICAL CENTER-** )<br>**PLYMOUTH,** )<br>**5215 Holy Cross Parkway** )<br>**Mishawaka, Indiana 46545** )<br> )<br>**ST. JOSEPH REGIONAL MEDICAL CENTER-** )<br>**SOUTH BEND,** )<br>**5215 Holy Cross Parkway** )<br>**Mishawaka, Indiana 46545** )<br> )<br>                    **Plaintiffs,** )<br>        **v.** )<br> )<br>**SYLVIA M.  BURWELL, in her official capacity as** )<br>**Secretary of Health and Human Services** )<br>**200 Independence Avenue, S.W.** )<br>**Washington, DC  20201** )<br> )<br>                    **Defendant.** )<br> )<br> )<br> )<br> )<br> ) | **Case No.** |

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL
## ADVERSE AGENCY DECISION ON MEDICARE PAYMENT

## INTRODUCTION

1.      Plaintiffs (collectively, the "Hospitals") filed appeals with the Defendant Secretary of Health and Human Services (the "Secretary"; "HHS") review board (the Provider Reimbursement Review Board; "Board" or "PRRB") challenging the Secretary's payment determinations for the fiscal years at issue on the ground that errors and omissions in the HHS' calculation of components of the Medicare Disproportionate Share Hospital Adjustment ("DSH") payment formula (the "Medicare Fraction") wrongfully reduced the resulting DSH payments made to the Hospitals for the 1989-2001 fiscal years at issue.   The DSH payment compensates the Hospitals for serving an indigent population.

2.      In 2008, this Court issued a memorandum opinion and order finding that several systemic errors and omissions in the Secretary's computation of that component of the DSH payment formula tended to systematically reduce and understate the resulting DSH payments to hospitals. *Baystate Medical Center v. Leavitt,* 545 F. Supp. 2d 20, *amended by* 587 F. Supp. 2d 37 (D.D.C. 2008). The Court required the Secretary to revise HHS's calculations and pay the hospital the additional DSH payments due as a result of those corrections. The Secretary did not appeal that decision.

3.      Subsequently, in 2010, the Secretary issued a ruling, Ruling 1498-R, acquiescing in the *Baystate* decision. Ruling 1498-R required HHS to make the corrections required under the *Baystate* decision with respect to all pending appeals on this issue, including the periods at issue in this case.[1] However, Ruling 1498-R attempted unilaterally to impose offsetting penalties that would dilute the favorable impact of the

---

[1] On April 24, 2015 the Secretary issued Ruling 1498-R2, which amended Ruling 1498-R.  All references to Ruling 1498-R in this Complaint include Ruling 1498-R2.

*Baystate* corrections on the revised DSH payments made under the Ruling. The offsetting penalties would be applied under Ruling 1498-R through its retroactive application of new policies that were not in effect during the earlier periods at issue.

4.      This Court and the Court of Appeals have recently issued decisions invalidating the Secretary's retroactive application of her new policies in the calculation of the DSH payment. *See, Northeast Hosp. Corp. v. Sebelius,* 657 F.3d 1, 13-17 (D.C. Cir. 2011), *Allina Health Services v Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014), affirmed 746 F.3d 1102 (D.C. Cir. 2014.)  It is established that the provisions of Ruling 1498-R that would retroactively apply the new payment policies are invalid. Accordingly, for that reason and the additional reasons set forth below, the plaintiff hospitals request an order declaring invalid and setting aside the portions of Ruling 1498-R that seek wrongfully to apply new payment policies retroactively in the calculation of revised DSH payments for the 1991-2004 fiscal years at issue in this case.

5.      The Secretary improperly denied the Hospitals a substantial part of the DSH payments properly due them for services furnished to Medicare beneficiaries in the fiscal years at issue.

6.      For the fiscal periods of 2006-2007, each of the Hospitals filed appeals of the Secretary's disallowance with the PRRB.

7.      Ruling 1498-R unilaterally and arbitrarily declared the Hospitals' long-pending appeals moot.  Ruling 1498-R purported to acquiesce in this Court's 2008 decision in *Baystate Medical Center,* which required the Secretary to correct numerous errors and omissions in her calculation of the Medicare DSH payment. Ruling 1498-R, however, directs the PRRB to remand the Hospitals' appeals to the Secretary's audit

contractors (the "Intermediary" or the "Medicare Administrative Contractor" (the "MAC")) so that they can recalculate the hospitals' DSH payments by not only 'making the corrections required by *Baystate* but by also applying new payment policies retroactively to periods when those policies were not in effect. These additional aspects of the Ruling contradict the Secretary's express representations to this Court in *Baystate* and are otherwise invalid for the reasons recently decided in *Northeast Hospital* and *Catholic Health Initiative.*

8.      By letter dated September 28, 2015, received by the Provider on October 2, 2015, the PRRB issued a notice under the authority of Ruling 1498-R remanding the Hospitals' appeal of Case No. 12-0522GC.  (Exhibit 1.)  The Hospitals are compelled to commence this action as a result of this remand.

9.      HHS rulings, such as Ruling 1498-R, are published under the authority of the Administrator of a component of HHS, the Centers for Medicare and Medicaid Services ("CMS"). By regulation, such rulings are made "binding on all CMS components" and "on all HHS components that adjudicate matters under the jurisdiction of CMS."  42 C.F.R. § 401.108.  In contrast to a regulation, however, CMS rulings are not issued through notice and comment rulemaking and do not have the force and effect of law. Accordingly, a ruling that violates a statute or a regulation that has not been issued through notice and comment rulemaking is invalid.

10.      The recalculations upon remand required by Ruling 1498-R would not resolve the Hospitals' claim or redress their claimed injury in this case. The recalculations would not be performed under Ruling 1498-R in the way the Hospitals contend the DSH payment should be calculated. The recalculations required under Ruling 1498-R could

reduce the DSH payments previously made to the Hospitals and require the Hospitals to repay to the Secretary amounts previously paid to them for the periods at issue.

11.     Two fractions are used to calculate the Medicare DSH payment at issue: the "Medicaid fraction" and the "Medicare Part A/SSI fraction." The fractions are intended to measure the proportion of a hospital's patients who are low-income and, therefore, more costly to treat.

12.     Medicare part A provides coverage for inpatient hospitalization, but is subject to exhaustion after a prescribed number of days.  The Hospitals contend that days for patients who were enrolled in Medicare part A, but who exhausted coverage or were not entitled to have part A benefits paid for those days must be excluded from the numerator and the denominator of the Medicare Part A/SSI fraction and should be included in the numerator of the Medicaid fraction when the patient was eligible for Medicaid. These patient days would include (1) the days for Medicare beneficiaries who had exhausted their benefits under part A ("part A exhausted days"), (2) the days for Medicare beneficiaries that were paid by another payer who had primary liability ("Medicare secondary payer days"), and (3) Medicare beneficiary days that were otherwise not covered and paid by Medicare part A ("noncovered days").

13.     Through the Ruling at issue here, HHS would add all part A exhausted days, Medicare secondary payer days, and noncovered days to the denominator of the Medicare Part A/SSI fraction for periods before an October 2004 policy change, when the Secretary determined to start counting these days in the Medicare Part A/SSI fraction after October 1, 2004. To the extent that those patients were receiving supplemental security income payments on the days they were hospitalized, the patients would be

included in the numerator of the Medicare Part A/SSI fraction. Most Medicare secondary payer and noncovered days, as well as many part A exhausted days, are incurred by people who do not meet the requirements for supplemental security income payments. Therefore, the inclusion of these patients in the Medicare Part A/SSI fraction would almost always reduce that fraction and therefore reduce the DSH payments to the Hospitals.

14.     The Hospitals also contend that days for patients who choose to join a health maintenance organization and were enrolled in Medicare+Choice or Medicare Advantage plan under part C of the Medicare Act ("Medicare part C days") must be excluded from the Medicare Part A/SSI fraction. Ruling 1498-R indicates that the Secretary would add Medicare part C days to the Medicare Part A/SSI fraction on remand, at least for periods on or after October 1, 2004. Medicare part C days were not previously counted in the Medicare Part A/SSI fraction for any period prior to 2007, except for a miniscule number that were counted due to an editing error by a CMS employee.

15.     The resolution of this dispute will either require the Secretary to make additional DSH payments to the Hospitals, if the Hospitals prevail on their claims, or may require the Hospitals to repay a portion of the DSH payments they previously received from the Secretary, if the Secretary's current position is accepted. For periods prior to October 1, 2004, the Hospitals' DSH payments would be reduced because the addition of (1) part A exhausted, (2) Medicare secondary payer and (3) noncovered days to the Medicare Part A/SSI fraction, where those days were not previously included, would in almost all cases dilute that fraction. Part A exhausted, Medicare secondary payer and

noncovered days were already included in hospitals' Medicare Part A/SSI fractions for federal fiscal years beginning on or after October 1, 2004; thus, the Ruling only applies to these types of days for periods prior to October 1, 2004. Similarly, for periods on or after October 1, 2004, the inclusion of Medicare part C days in the Medicare Part A/SSI fraction where they were not previously included would in almost all cases dilute that fraction.

16.     Ruling 1498-R imposes new substantive payment standards retroactively and in violation of the plain meaning of the statute with no more process than the "signing of the pen" (in the words of the Secretary's counsel in a related case challenging the Ruling). In *Northeast Hospital Corp. v. Sebelius,* the Court of Appeals held that the Secretary's current position, requiring Medicare part C days to be counted in the Medicare Part A/SSI fraction, cannot be applied to periods that began before the Secretary adopted a change in policy in October 2004. *Northeast Hospital Corp.,* 657 F.3d at 13-17. Under the Ruling, the Secretary is attempting to apply her current position with respect to these other types of days retroactively to periods that began before October 2004.

17.     Ruling 1498's ostensible purpose is to comply with this Court's 2008 decision in *Baystate Medical Center v. Leavitt,* 545 F. Supp. 2d 20. The Ruling, however, does not comply with that decision. The *Baystate* decision requires the Secretary to correct several systemic errors in her agency's calculation of the DSH payment, which tended universally to produce "potentially enormous" underpayments to hospitals that treat low-income patients. The parts of Ruling 1498-R at issue here conflict with the express representations made to this Court by the Secretary in *Baystate* regarding how the

DSH payment should be calculated for the periods at issue and with how the Secretary actually recalculated Baystate's Medicare Part A/SSI fractions in 2009 on remand. Ruling 1498-R, if allowed to stand, will offset additional DSH payments that the hospitals should receive as a result of the corrections required by the *Baystate* decision. Thus, Ruling 1498-R's ostensible acquiescence in the *Baystate* decision is not acquiescence at all. Rather, it is an attempt to do what the Secretary could not convince the Court in *Baystate* to do. It negates the *Baystate* decision with the stroke of a pen.

18.     The provisions of Ruling 1498-R at issue here also conflict with the plain language of the statute governing the calculation of the DSH payment, 42 U.S.C. § 1395ww(d)(5)(F)(vi). As shown below, the Ruling not only violates the plain meaning of the DSH statute but is also inconsistent with the DSH regulation and the Secretary's interpretation of the regulation that was in effect for the periods at issue here. It also violates the appeal provisions of the Social Security Act as well as the rulemaking requirements in the Social Security Act and Administrative Procedure Act.

19.     In this case by letter dated September 28, 2015, the PRRB issued a notice remanding the Hospitals' appeal of Case No. 12-0522GC. (Exhibit 1.)

20.     The Hospitals bring this action appealing from the PRRB's notice dated September 28, 2015 remanding the Hospitals' appeal of Case No. 12-0522GC. (Exhibit 1.)  The Hospitals respectfully request, for the reasons set forth below, that this Court set aside the provisions of the Ruling that declare the Hospitals' appeals to the PRRB moot and that require the PRRB to remand the appeals to the Intermediary for recalculation of the hospitals' DSH payments. By requiring recalculations of the DSH payments for the fiscal years at issue under the Ruling, the Secretary would offset the positive impact of

the correction of the errors and omissions found by this Court in *Baystate* with a penalty that would result in the Secretary recouping DSH payments previously made to Hospitals.

## JURISDICTION AND VENUE

21.    This is a civil action brought to obtain judicial review the action in Case No. 12-0522GC, by the Provider Reimbursement Review Board (Board or PRRB), acting as a component of the United States Department of Health and Human Services (HHS). By letter dated September 28 2015, the PRRB issued a notice remanding the Hospitals' appeal of Case No. 12-0522C. (Exhibit1.)

22.    This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the "Act", and the Administrative Procedure Act, 5 U.S.C. § 706.

23.    This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. § 1331, 5 U.S.C. § 701, 28 U.S.C. § 2201, and 28 U.S.C. § 1361.

24.    Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. § 1391(e).

## PARTIES

25.    The following are the plaintiffs (the "Hospitals") in this case:

   a)    Plaintiff Mercy Medical Center Sioux City (Medicare Provider No. 16-0153) is a not-for-profit general acute-care hospital located in Sioux City, Iowa, that furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program and others. Its claims relate to fiscal years ("FYs") 6/30/2006 and 6/30/2007.

b)   Plaintiff Saint Agnes Medical Center (Medicare Provider No. 05-0093) is a not-for-profit general acute-care hospital located in Fresno, California, that furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program and others. Its claims relate to FY 6/30/2006.

c)   Plaintiff Mount Carmel Health System (Medicare Provider No. 36-0035) is a not-for-profit general acute-care hospital located in Columbus, Ohio, that furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program and others. Its claims relate to FY 6/30/2006.

d)   Plaintiff Mount Carmel St. Ann's (Medicare Provider No. 36-0012) is a not-for-profit general acute-care hospital located in Columbus, Ohio, that furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program and others. Its claims relate to FY 6/30/2006.

e)   Plaintiff St. Joseph Regional Medical Center – Plymouth (Medicare Provider No. 15-0076) is a not-for-profit general acute-care hospital located in Mishawaka, Indiana, that furnishes inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program and others. Its claims relate to FY 6/30/2007.

f)   Plaintiff St. Joseph Regional Medical Center – South Bend (Medicare Provider No. 15-0012) is a not-for-profit general acute-care hospital located in Mishawaka, Indiana that furnishes

inpatient and outpatient hospital services to patients entitled to benefits under the Medicare program and others. Its claims relate to FY 6/30/2007.

26.     At all relevant times, the Hospitals had Medicare provider agreements with the Secretary of HHS and were eligible to participate in the Medicare program.

27.     This Court has jurisdiction over the Hospitals' claims, pursuant to 42 U.S.C. § 1395oo because:

28.     Each of the Hospitals filed cost reports for the FYE's on appeal as required by 42 U.S.C. § 1395oo(a);

29.     Each Hospital was dissatisfied with its fiscal intermediaries' "final determination … as to the amount of total program reimbursement due the provider … for the period covered by such report," as required by 42 U.S.C. § 1395oo(a)(1)(A);

30.     The amount in controversy for each Hospital exceeds $10,000, as required by 42 U.S.C. § 1395oo(a)(2);

31.     Each Hospital timely filed an appeal with the PRRB pursuant to 42 U.S.C. § 1395oo(a)(3);

32.     The Hospitals' appeals were organized as Trinity Health 2006-2007 DSH/SSI CIRP Group, Case No. 12-0522GC.

33.     By letter dated September 28, 2015, received the Hospitals on October 2, 2015, the PRRB issued a notice under the authority of Ruling 1498-R remanding the Hospitals' appeal of Case No. 12-0522GC. (Exhibit 1.);

34.     This civil action is timely filed in light of the PRRB's September 28, 2015 remand of Case No. 12-0522GC, received the Hospitals on October 2, 2015, under the authority of Ruling 1498-R, as required by 42 U.S.C. § 1395oo(f).

35.     This Court also has jurisdiction to hear this case pursuant to 28 U.S.C. § 136l because the hospitals are entitled to a writ of mandamus requiring the Secretary to retract Ruling 1498-R, to maintain the Hospitals' appeals before the PRRB and to ensure that the Hospitals' DSH eligibility and adjustments are calculated in accordance with the law.  A final decision of the PRRB is not required for this Court to exercise its mandamus jurisdiction because, as noted *supra,* for the Hospitals to await receipt of the anticipated, inevitable decision of the PRRB to dismiss the Hospitals' appeals under the authority of Ruling 1498-R would be an exercise in futility.

36.     This Court has jurisdiction to hear this case pursuant to either the Administrative Procedures Act, 5 U.S.C. § 701 et seq. and/or the Declaratory Judgment Act 28 U.S.C. § 220l because there is an actual controversy over the amounts to which the Hospitals were entitled to receive through their Medicare DSH adjustments, and the Hospitals seek a determination that the Secretary's Ruling 1498-R is unlawful because it divests the PRRB of jurisdiction over their timely appeals and requires the Intermediary to recalculate their DSH eligibility and adjustments in violation of the Medicare Act and the law of this Federal Judicial Circuit.

37.     Defendant, Sylvia M. Burwell, Secretary of HHS (Secretary), or her predecessor(s) in office, is the federal officer responsible for the administration of the Medicare program.  Defendant Sebelius is sued in her official capacity.

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

38.     The Medicare program was established to provide health insurance to the aged and disabled. 42 U.S.C. §§ 1395-1395cc. The Centers for Medicare and Medicaid Services ("CMS"), formerly the Health Care Financing Administration ("HCFA"), is the operating component of HHS charged with administering the Medicare program.

39.     The operating costs of inpatient hospital services are reimbursed by Medicare primarily through the Prospective Payment System ("PPS"). 42 U.S.C. § 1395ww(d). The PPS statute contains a number of provisions that adjust reimbursements based on hospital-specific factors. *See* 42 U.S.C. § 1395ww(d)(5). This case involves the hospital-specific DSH adjustment, which requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "significantly disproportionate number of low-income patients." 42 U.S.C. § 1395ww(d)(5)(F)(i)(I).

40.     Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the hospital's "disproportionate patient percentage" (DPP). 42 U.S.C. § 1395ww(d)(5)(F)(v). The DPP is the sum of two fractions, the "Medicare and Medicaid fractions," for a hospital's fiscal period. 42 U.S.C. § 1395ww(d)(5)(F)(vi).   Hospitals whose DSH percentages meet certain thresholds receive an adjustment that results in increased PPS payments for inpatient hospital services. 42 U.S.C. § 1395ww(d)(5)(F)(ii).

41.     The first fraction's numerator is the number of a hospital patient days for such period who (for such days) were entitled to both Medicare Part A and Supplemental Security Income (SSI) benefits, and the denominator is the number of patient days for patients entitled to Medicare Part A. *Id.*   This case involves this first fraction, which is hereinafter referred to as the "SSI/Medicare Fraction."

42.     The second fraction's numerator is the number of hospital patient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX for such period but not entitled to benefits under Medicare Part A, and the denominator is the total number of the hospital's patient days for such period.

*Id.* The second fraction is frequently referred to as the Medicaid fraction, which is not directly at issue in this case.

43. The SSI program is administered by the Social Security Administration (SSA); therefore, identifying patients who were entitled to SSI during their hospitalization requires access to SSA's SSI data. To implement the DSH legislation, the number of patient days for those patients entitled to both Medicare Part A and SSI is determined by matching data from the MEDPAR file, which is Medicare's database of hospital inpatients, with a file created for CMS by SSA to identify SSI-eligible individuals.

44. In *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, as amended, 587 F. Supp. 2d 37, 44 (D.D.C. 2008) (*Baystate*), the United States District Court for the District of Columbia determined that the Secretary was not using the "best available data" to determine providers' SSI fractions. 545 F. Supp. 2d at 57-58.  In order to correct the Secretary's errors, the Court specifically ordered the Secretary to:

    a. Use patient social security numbers in the data matching process. 587 F. Supp. 2d at 40;

    b. Use updated SSA records that become available before the time that the cost report at issue is settled; 545 F. Supp. 2d at 58.

    c. Forced pay SSI records; *Id.* and

    d. Inactive SSI records. *Id.*

45. CMS' payment and audit functions under the Medicare program are contracted to insurance companies known as fiscal intermediaries or Medicare Administrative Contractors. Fiscal intermediaries determine payment amounts due the

providers under Medicare law and regulations. 42 U.S.C. § 1395h, 42 C.F.R. §§ 413.20(b) and 413.24(b). Although the intermediary calculates the DPP, it is CMS that computes the SSI fraction.

46.    At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. § 405.1803.

47.    A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the PRRB within 180 days of the receipt of the NPR. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

48.    The PRRB is an administrative tribunal appointed by the Secretary. *See* 42 U.S.C. § 1395oo(h). The members of the PRRB must be "knowledgeable in the field of payment to providers of service" under the Medicare program. *Id.*

49.    Hospitals may take appeals to the PRRB individually for a single cost reporting period or together in a group appeal on an issue in common to two or more hospitals and for one or more cost reporting periods. *See* 42 U.S.C. §§ 1395oo(a) and (b); 42 C.F.R. §§ 405.1835 and 405.1837.

50.    The amount in controversy required for an individual hospital appeal to the PRRB is $10,000 at the time the appeal is filed. *See* 42 U.S.C. § 1395oo(a)(2); 42 C.F.R. §§ 405.1835(a)(2), 405.1839(a)(1)-(2) and (c)(5).

51.     The amount in controversy for a group appeal to the PRRB is $50,000 in

the aggregate for all hospitals and cost reporting periods included in the group appeal.

*See* 42 U.S.C. § 1395oo(b); 42 C.F.R. §§ 405.1837(a)(3), 405.1839(b) and (c)(5).

52.     The PRRB has long since recognized its inherent authority to review any

matter covered by a cost report. Indeed, the Board stated this principle as early as 1979:

> The Board is of the opinion that it has [jurisdiction]. Under
> the provisions of 42 CFR § 405.1851, Subpart R, the Board
> must fully inquire into all matters at issue; and, under §
> 405.1869, the Board has the power to make any other
> modifications on matters covered by such cost report, even
> though such matters were not considered in the
> Intermediary's determination. Accordingly, for
> completeness of the record and in consideration of due
> process, the Board elicited from the parties additional
> evidence and/or argumentation concerning the
> appropriateness of whether the provider is entitled to
> "relief" under any of the exception provisions of §
> 405.460(f)(2) and (3).
>
> PRRB Dec. No. 79-D22 (April 13, 1979) (Medicare and
> Medicaid Guide (CCH) ¶ 29,913).

53.     The recognition in 1979 by the PRRB of its inherent authority to review

all matters covered by the cost report, with or without an explicit intermediary audit

adjustment, presaged by nearly a decade the Supreme Court's similar pronouncement in

the landmark decision of *Bethesda Hospital Association v. Bowen*, 485 U.S. 399 (1988).

54.     This Court has recognized that the intermediary issues a single DSH

Adjustment, and the provider has the right to appeal any or all of the components of the

adjustment. *St. Joseph's Hospital v. Leavitt*, (D.C. Dist. 2006) U.S. Dist. Lexis 14272.

Decisions of the PRRB recognize this principle.

55.     In the event the intermediary makes further adjustments to a provider's payment after an NPR has been issued, the intermediary issues to the provider a revised NPR.

56.     The governing regulation in effect during the relevant period, 42 C.F.R. 405.1889, clearly provided that a revised NPR "shall be considered a separate and distinct determination" for purposes of PRRB jurisdiction.

57.     The PRRB *Instructions* in effect during the relevant period provided as follows regarding the right of a provider to appeal to the PRRB from a revised NPR:

> The Board accepts jurisdiction over appeals from a revised Notice of Program Reimbursement (NPR) where the issue(s) in dispute were specifically adjusted by that revised NPR.

58.     A provider has the right to file an appeal with the PRRB within 180 days of a revised NPR.  42 U.S.C. § 1395oo(a).

59.     A "settlement or partial settlement of an issue" in an individual or group appeal to the PRRB "does not deprive the Board of jurisdiction" if the amount in controversy changes to an amount that is less than $10,000 for an individual hospital appeal or $50,000 for a group appeal. *See* 42 C.F.R. § 405.1839(c)(5).

60.     The Secretary's regulations provide that the PRRB is bound by "CMS Rulings."  *See*  42 C.F.R. §§ 401.108, 405.1867.  Those regulations state that CMS Rulings are "binding on all CMS components" and "on all HHS components that adjudicate matters under the jurisdiction of CMS."  *See* 42 C.F.R. § 401.108.

61.     A decision of the PRRB shall be final unless the Secretary, on the Secretary's own motion, and within 60 days after the provider of services is notified of the PRRB's decision, reverses, affirms, or modifies the PRRB's decision. 42 U.S.C.

§139500(f)(1). A provider has the right to obtain judicial review of any final decision of the PRRB, or any reversal, affirmance, or modification by the Secretary. 42 U.S.C. §1395oo(f)(1).

62.     A decision of the PRRB that the PRRB lacks jurisdiction is subject to judicial review. *See, UHI Inc. v Thompson,* 250 F.3d 993 (Sixth Circuit 2001) (PRRB decision declining to assert jurisdiction where provider failed to satisfy a deadline is subject to judicial review); *Inova Alexandria Hospital v. Shalala,* 244 F.3d 342 (Fourth Cir. 2001) (PRRB decision declining to assert jurisdiction where provider failed to satisfy a deadline is subject to judicial review); *Auburn Medical Center v Sebelius,* 642 F.3d 1145 (D.C.C. 2011) (PRRB decision declining to assert jurisdiction under theory of equitable tolling is subject to judicial review) (Reversed on other grounds, *Sebelius v. Auburn Medical Center,* 133 S.Ct. 117 (2013)).

## CMS RULING 1498-R

63.     April 28, 2010, CMS issued Ruling 1498-R. This Ruling applies to appeals in any of the three following categories:  (1) challenges to CMS' data matching process for matching Medicare and SSI eligibility data in determining the SSI/Medicare Fraction; (2) challenges to the exclusion from the disproportionate patient percentage (DPP) of non-covered inpatient hospital days (for example, Medicare secondary payer (MSP) days or exhausted benefit (EB) days); or (3) challenges to the exclusion from the DPP of labor/delivery room (LDR) inpatient days.

64.     Pursuant to CMS Ruling 1498-R, any appeal involving any of the above three categories must be remanded by the PRRB to the fiscal intermediary.  The Ruling further requires the fiscal intermediary to revise the SSI/Medicare Fraction to include certain inpatient hospital days (*e.g.* MSP and EB days) in the SSI/Medicare Fraction.

The Ruling further requires the intermediary to re-compute the SSI's fraction using the revised data matching process ordered by this Court in *Baystate* or, in the alternative, the methodology implemented pursuant to the 2011 Inpatient Hospital PPS Rule.

65.     CMS-1498-R states that its agreement to re-compute the SSI/Medicare Fraction:

> eliminates any actual case or controversy regarding the hospital's previously calculated SSI fraction and DSH payment adjustment and thereby renders moot each properly pending claim in a DSH appeal involving the hospital's previously calculated SSI fraction and the process by which CMS matches Medicare and SSI eligibility data, provided that such claim otherwise satisfies the applicable jurisdictional and procedural requirements of section 1878 of the Act, the Medicare regulations, and other agency rules and guidelines.

66.     CMS Ruling 1498-R further provides that "it is hereby held that the PRRB and the other administrative tribunals lack jurisdiction over each properly pending claim on the SSI/Medicare Fraction data matching process issue, provided that such claim otherwise satisfies the applicable jurisdictional and procedural requirements for appeal."

67.     The regulation at 42 C.F.R. §401.108 states that CMS Rulings are binding on all CMS components. With respect to the scope of the PRRB's legal authority, the regulation at 42 C.F.R. § 405.1867 states that, "[i]n exercising its authority to conduct proceedings... the PRRB must comply with all the provisions of Title XVIII of the Act and regulations issued thereunder, as well as CMS Rulings issued under the authority of the Administrator as described in § 401.108."

## THE REVISED MATCHING METHODOLOGY DOES NOT COMPLY WITH *BAYSTATE*

68.     The revised matching methodology mandated by CMS 1498-R does not address one of the key matching deficiencies identified by the Court in *Baystate*.

Specifically, the revised methodology does not mandate the use of Social Security numbers.

69.     Under the revised matching methodology mandated under CMS 1498-R, the Medicare Enrollment Database (EDB) will be used for the purpose of matching social security numbers of individuals entitled to Medicare benefits to individuals who are also receiving SSI benefits.

70.     Information in the EDB is not retrievable by individual social security numbers. The Federal Register Privacy Act notices states that information in the EDB is retrievable by Health Insurance Claim (HIC) number or name search. The official description of the EDB states that the records in the system include the "individual's health insurance numbers, name, geographic location, race/ethnicity, sex, and date of birth." There is no indication from the Federal Register notices that Social Security numbers are included in the EDB.  *See* 67 Fed. Reg. 3203, January 23, 2002; 73 Fed. Reg. 10249, February 26, 2008.

71.     As a result, CMS 1498-R does not address one of the key matching deficiencies identified by the district court in *Baystate*, *i.e.,* the failure to match Medicare and SSI records on the basis of Social Security numbers.

72.     Moreover, there are substantive deficiencies in the records maintained by the SSA, which CMS 1498-R fails to address.  CMS states "Codes beginning with the letter 'S' reflect records that are in a 'suspended' status and, according to SSA, do not represent individuals who are entitled to SSI benefits." The "S" codes will be changed to an active code upon the making of a retroactive entitlement determination. However, this change is only reflected on SSA's records for the month in which the retroactive SSI

payment is actually made, and not for any prior months which were in a suspended status. Thus, the match will identify entitlement only for the month in which the retroactive payment is actually made, and not for any prior months that the retroactive payment was intended to cover.

73.     Similarly, Code "S-06" is applied where the payment was suspended because "recipient's address is unknown."  The fact that a recipient's address is unknown is not a reason for denying payment under the applicable regulations.   An otherwise eligible individual is "entitled" to SSI benefits unless the reason for non-payment is one of the reasons specified in the applicable regulations. *See* 20 C.F.R. §§ 416.207 – 416.216. As the fact that a recipient's address is unknown is not one of the reasons specified in 20 C.F.R. §§ 416.207 – 416.216, these individuals should be placed in an active code status, so that the revised matching program will include them in the SSI/Medicare Fraction.  Once again, CMS 1498-R does not address this deficiency in the process of formulating the SSI/Medicare Fraction.

### THE RECALCULATIONS REQUIRED BY CMS RULING 1498-R CONTRADICT *BAYSTATE* AND THE D.C. CIRCUIT'S PRECEDENT

74.     In addition to purporting to require the SSI/Medicare Fraction to be recalculated in a manner consistent with *Baystate*, CMS Ruling 1498-R requires the inclusion of certain additional days in the SSI/Medicare Fraction, such as EB days, MSP Days, and potentially Medicare HMO days. To wit, the Ruling states:

> On CMS' view, the inpatient days of a person who was entitled to Medicare Part A should be included in the DPP, regardless of whether a specific inpatient hospital stay was covered under Part A or whether the patient's Part A hospital benefits were exhausted … On the other hand, we believe that the non-covered inpatient days (for example, MSP days) and the exhausted benefit days of patients who were still entitled to Part A do not belong in the numerator

of the Medicaid fraction because, under section 1886(d)(5)(F)(vi)(II) of the Act, the Medicaid fraction numerator consists of the number of Medicaid-eligible inpatient days of persons "who were not entitled to benefits under Part A;" again, a beneficiary remains entitled to Medicare Part A even if an inpatient stay is not covered under Part A (for example, because the inpatient days were covered and paid by a primary group health plan) and even when a patient's Part A hospital benefits were exhausted..." *See* Ruling at 9-10.

75.     This is the same reasoning that the Secretary offered for including Medicare Part C days in the SSI/Medicare Fraction and for excluding Medicare Managed Care (M+C) or Part C Days from the numerator of the Medicaid fraction:

> The key interpretive question in this case is whether a person enrolled in an M+C plan is still 'entitled to benefits under Part A.' The Secretary says yes. ... If an M+C patient is entitled to benefits under Part A (the Secretary's interpretation), then his hospital days are counted in both the numerator of the Medicare fraction, if he is entitled to SSI, and the denominator of that fraction. At the same time, the patient's days are not counted in the numerator of the Medicaid fraction, but are counted in the denominator of that fraction.

*Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 5 (D.C. Cir. 2011) (*Northeast*).

76.     As was the case in *Northeast*, the statutory language and the Secretary's prior interpretations thereof prohibit the Secretary from interpreting the term "eligible" under Medicare Part A to include MSP, EB and other similar charges that are not "paid" by Medicare Part A.

77.     The pertinent statutory provisions require entitlement to Part A benefits as a condition of inclusion in the SSI/Medicare Fraction.  With respect to EB days, the Medicare statute provides that the Part A benefit for inpatient hospital services covers only a specified number of days per spell of illness. 42 U.S.C. § 1395d(a)(1); 42 C.F.R. §

409.61(a). Therefore, payment under Part A may not be made for services rendered after those limits have been exhausted. 42 U.S.C. § 1395d(b)(1).

78.     Similarly, under the Medicare MSP provisions, payment may not be made under Medicare Part A "when payment has been made or can reasonably be expected to be made" under a health insurance plan or liability insurance policy. 42 U.S.C. § 1395y(b)(2)(A). There is an exception under which CMS is authorized to make "conditional payments" if the primary payer has not made or cannot reasonably be expected to make prompt payment. However, upon receipt of payment from the primary payer, the beneficiary or provider must reimburse the Medicare trust fund for these conditional payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

79.     This statutory scheme clearly establishes that patients to whom the MSP and EB provisions are applied are not "entitled to benefits under Part A." *See Jewish Hosp. v. Secretary of Health & Human Servs.*, 19 F.3d 270, 275 (6th Cir. 1994)("entitled" as used in the SSI/Medicare Fraction means that the beneficiary "possesses the right or title to that benefit" and the "Medicare proxy fixes the calculation upon the absolute right to receive an independent and readily defined payment."); *Legacy Emanuel Hosp. & Health Ctr. v. Shalala*, 97 F.3d 1261, 1264-65 (9th Cir. 1996) (the term 'entitled' refers to the absolute right to . . . payment.").

80.     The Secretary has also interpreted "entitled" to mean "eligible for the benefit" under the new Part D drug benefit program. CMS has stated as follows in this regard:

> [W]e generally have interpreted the concept of "entitled" to benefits to mean that an individual has met all of the necessary requirements for a benefit (that is, is eligible for the benefit), and has actually applied for and been granted

coverage. … Accordingly, we will deem an individual "entitled" to Part A, and thus a Part D eligible individual, if the individual is eligible for benefits under Part A, and has actually applied for and been granted coverage under Part A.

70 Fed. Reg. 4194, 4202 (Jan. 28, 2005).

81.     By definition, no payment can be made for EB days under Part A, and therefore a patient cannot be said to be "entitled to" such payment.  Indeed, the Secretary has explicitly conceded that there is no entitlement to Part A benefits for EB days with respect to the Medicare DSH adjustment for "Medicare dependent, small rural hospital[s]."  *See* 42 U.S.C. §1395ww(d)(5)(G)(iv)(IV).

82.     In the September 4, 1990 IPPS final rule, the Secretary stated that individuals are "entitled to benefits under [Medicare] part A" only when they are entitled to have their medical services paid for under Medicare part A. The rule states that "[e]ntitlement to payment under part A ceases after the beneficiary has used 90 days in a benefit period and has either exhausted the lifetime reserve days or elected not to use available lifetime reserve days." 55 Fed. Reg. 35990, 35996 (Sept. 4, 1990). The Secretary went on to state that "[s]ince patients who have exhausted their part A benefits are no longer entitled to payment under part A, we do not believe such stays should be counted" in the Medicare fraction. *Id.*

83.     The same reasoning applies to MSP days in which payment is made by the primary payer, and not the Medicare program.  In such cases, the absence of a Part A payment clearly means that an individual is not "entitled" to such payment. Indeed, inpatient psychiatric hospital and skilled nursing care that is paid for by a primary payer is not counted against the number of inpatient care days available to the beneficiary under Medicare Part A. 42 C.F.R. § 411.30(a). Presumably, these days would be counted

against a beneficiary's available benefit days if the beneficiary was "entitled" to payment

for those days from Medicare.  Moreover, the conditional payments which may be made

under the MSP rules do not establish an "absolute, independent right to payment under

Part A." *Jewish Hosp.*, *supra*.

84.     In fact, Ruling 1498-R explicitly concedes that the FY 2005 final rule

changed the CMS interpretation and policies concerning whether "non-covered" days

may be included in the SSI/Medicare Fraction.  The Ruling states:

> The FY 2005 IPPS final rule amended the DSH regulation
> by eliminating the requirement that Part A inpatient
> hospital days must be covered in order for such days to be
> included in the SSI fraction. 69 Fed. Reg. at 49246
> (amending 42 C.F.R. § 412.106(b)(2)(i)). *See also id.* at
> 49098- 99 … Under our revised policy, the inpatient days
> of a person who was entitled to Medicare Part A are
> included in the numerator of the hospital's DSH SSI
> fraction (provided that the patient was also entitled to SSI)
> and in the SSI fraction denominator, regardless of whether
> the individual's inpatient hospital stay was covered under
> Part A or whether the patient's Part A hospital benefits
> were exhausted.

85.     Thus, in summary Ruling 1498-R has the following adverse, unlawful

impact on the Hospitals:

86.     Rule 1498-R directs the Intermediary, upon remand by the PRRB, to

recalculate and apply a revised Medicare Part A/SSI fraction, ostensibly to implement

this Court's decision in the *Baystate* case. However, the Ruling also requires that the

recalculated Medicare Part A/SSI fractions include a hospital's Medicare eligible days,

for periods prior to October 1, 2004, regardless of whether the patient was entitled to

have Medicare part A payments made on his behalf for those patient days. These

provisions of Ruling 1498-R flatly contradict the Secretary's express representations to

this Court in *Baystate* and apply even if a hospital claims in its appeal to the PRRB that

Medicare eligible days should be *excluded* from the Medicare Part A/SSI fraction and included in the numerator of the Medicaid fraction. As discussed in the following paragraphs of this Complaint, these provisions of the Ruling on Medicare eligible days would reduce DSH payments and result in recoupment of DSH payments previously made to hospitals for the cost reporting periods involved in these appeals to the PRRB.

87.    In addition, the provisions of Ruling 1498-R indicate that on remand, the recalculated Medicare Part A/SSI fractions will include Medicare part C days, for periods on or after October 1, 2004, even though patients receiving benefits under Medicare part C were not entitled to have Medicare part A payments made on their behalf for those patient days. It is not clear how the Secretary intends to effectuate the inclusion of Medicare part C days in the Medicare Part A/SSI fraction, because she does not have the necessary data for years prior to 2007, other than for teaching hospitals and certain other hospitals that have submitted no-pay claims for Medicare Advantage patients pursuant to several agency transmittals. *See, e.g.,* Change Request 6329, Transmittal No. 1695 (Mar. 6, 2009), *available* at   http://www.cms.gov/transmittals/downloads/R1695CP.pdf;   *see also* Change Request 6821, Transmittal 696 (May 5, 2010) (requiring hospitals to furnish data needed to include Medicare part C days for 2007 in the Medicare Part A/SSI fraction by August 31, 2010); *see also Northeast Hosp.,* 657 F.3d at 15-16 (discussing Secretary's failure to count Medicare part C days in the Medicare Part A/SSI fraction).

88.    The inclusion of Medicare part C days in the Medicare Part A/SSI fraction is contrary to the Medicare statute because the patients at issue were eligible for Medicaid and they were not entitled to benefits under part A for such days because they had elected instead to receive benefits under the Medicare+Choice program under part C of the

Medicare Act. *See* 42 U.S.C. § 1395w-21(a)(1)(B). As discussed in the following paragraphs of this Complaint, the inclusion of Medicare part C days in the Medicare Part A/SSI fractions would further reduce DSH payments and result in recoupment of DSH payments previously made to hospitals for the cost reporting periods involved in appeals to the PRRB.

89.     Ruling 1498-R asserts that CMS's "original policy" was to exclude all Medicare eligible days from the numerator of the Medicaid fraction. That statement in the Ruling conflicts with the Secretary's original policy at the inception of the DSH payment in 1986 and for the next 14 years, as shown in preceding paragraphs of this Complaint.

## SPECIFIC FACTS PERTAINING TO THIS CASE

90.     The Hospitals filed timely appeals before the PRRB.

91.     The stated issue in each of the appeals was:

> Whether the Supplemental Security Income (SSI) percentage used to compute Medicare DSH payments has been determined in accordance with the Medicare statues.

92.     By letter dated September 28, 2015, received by the Hospitals on October 2, 2015,  the PRRB notified the Hospitals that it remanded Case No. 12-0522GC. (Exhibit 1.)

93.     CMS Ruling 1498-R is binding on all components of HHS, including the PRRB. *See* 42 C.F.R. §§ 401.108(c); 405.1867.

## COUNT I: UNLAWFUL TREATMENT OF THE MEDICARE SECONDARY PAYER, EXHAUSTED BENFIT AND OTHER SIMILAR DAYS IN THE DSH CALCULATION

94.     All of the foregoing allegations are incorporated as if fully set forth herein.

95.     CMS Ruling 1498-R requires the inclusion of non-covered inpatient hospital days in the SSI/Medicare Fraction, including MSP, EB and other similar days.

Inclusion of these days in the SSI/Medicare Fraction is invalid because it is contrary to the plain language of the statute.

96.     Based on the foregoing, the PRRB's September 28, 2015 decision remanding Case No. 15-0522GC, was arbitrary and capricious and otherwise not in accordance with law.  5 U.S.C. §706(2)(A).

97.     As a result of the Secretary's unlawful Ruling and instructions to its fiscal Intermediaries the Hospitals will suffer economic harm because their DPP and/or DSH adjustments will be lower than that to which they are entitled under the law.

98.     Based on the foregoing, the Hospitals are entitled to an order declaring the Secretary's instructions in CMS Ruling 1498-R to be unlawful and/or for a writ of mandamus requiring the Secretary to calculate the Hospital's DPP for the fiscal years at issue here correctly.

## COUNT II: CONTINUED FAILURE TO USE BEST AVAILABLE DATA TO CALCULATE THE SSI FRACTION

99.     All of the foregoing allegations are incorporated as if fully set forth herein.

100.    CMS Ruling 1498-R is arbitrary, capricious, in violation of the Medicare Act and/or otherwise in violation of the law, in violation of 5 U.S.C. §706(2)(A), because it continues to fail to use "the most reliable data available to produce figures that can be considered sufficiently accurate" and otherwise fails to comply with this Court's *Baystate* decision, including the following errors:

101.    The failure to use Social Security numbers in the matching process.

102.    The revised matching process fails to take into consideration SSI beneficiaries who are entitled to SSI, but whose payments are in suspense or other non-pay status.

103.    Under the erroneous terms of the Ruling, individuals are "entitled" to SSI only when they actually receive a SSI payment, whereas individuals are deemed "entitled" to Medicare even if they do not receive any payment from Medicare.

104.    Individuals whose SSI benefits are retroactively awarded will be captured in the matching process only in the month in which the retroactive payment is actually made, and not in the prior months, which the retroactive payment was intended to cover.

105.    As a result of the foregoing deficiencies, the Hospitals will suffer economic harm because their DPP and/or DSH adjustments will be lower than that to which they are entitled under the law as interpreted by this Court and the Court of Appeals.

106.    Based on the foregoing, the Hospitals are entitled to an order declaring the Secretary's instructions in CMS Ruling 1498-R to be unlawful and/or for a writ of mandamus requiring the Secretary to use the best available data, consistent with the decisions of this Court and the Court of appeals, to calculate the SSI fraction.

## COUNT III: CMS RULING 1498-R IS PROCEDURALLY UNLAWFUL AND MUST BE WITHDRAWN

107.    All of the foregoing allegations are incorporated as if fully set forth herein.

108.    CMS 1498-R constitutes a significant departure from the Secretary's interpretation of the Medicare statute and the processing of appeals before the PRRB; therefore the Secretary was subject to the advance notice and comment rulemaking required by the Administrative Procedures Act, 5 U.S.C. § 553.  The Secretary violated the Administrative Procedures Act by failing to comply with the fundamental requirements for advanced notice and comment rulemaking.

109.    Ruling 1498-R purports to render the Hospitals' appeals over issues covered thereby as if they had been resolved on the merits in the Hospitals' favor through an order requiring the Intermediaries to recalculate the Hospital's DPP and DSH adjustment in accordance with the strictures of the Ruling, thereby divesting the PRRB of jurisdiction over the categories of appeals covered by that Ruling.

110.    In the alternative, it would be in excess of the Secretary's authority under the Medicare Act to make a determination that its decision to require intermediaries to take action consistent with Ruling 1498-R resolves the *provider's* dissatisfaction. *See* 42 U.S.C. § 1395oo(a)("Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board … if … such provider … is dissatisfied with a final determination … as to the amount of total program reimbursement due the provider … for the period covered by such report.")  In this case, however, as more specifically stated in this Complaint, Ruling 1498-R does not satisfy the Hospitals' dissatisfaction with the final determination as to the amount of total program reimbursement due for the period covered by the cost reports at issue in this complaint.

111.    The publication requirements of the Medicare Act also provide that "no rule, requirement, or other statement of policy that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services shall take effect unless it is promulgated by the Secretary by regulation."  42 U.S.C. § 1395hh(a)(2). The Medicare Act also requires the Secretary to publish in the Federal Register, a list of all

manual instructions, interpretative rules, statements of policy, and guidelines of general applicability. 42 U.S.C. § 1395hh(c). The Freedom of Information Act (FOIA) similarly requires an agency to publish in the Federal Register statements of general policy and interpretations of general applicability. 5 U.S.C. §552(a)(1)(D).

112.    The policy contained in CMS 1498-R falls within the ambit of the publication requirements of 42 U.S.C. § 1395hh(a)(2) and/or 1395hh(c), as well as 5 U.S.C. §552(a)(1)(D).   The Secretary's failure to publish CMS Ruling 1498-R until after the fiscal year at issue in this case was a violation of these requirements, and the Secretary is therefore precluded from applying the interpretation contained in CMS 1498-R to the Hospitals in this case.   42 U.S.C. § 1395hh(e); 5 U.S.C. §552(a)(1); 5 U.S.C. §552(a)(2).

113.    As a result of the CMS Ruling 1498-R, and the calculations mandated thereby, the Hospitals will suffer economic harm because their DPP and/or DSH adjustments will be lower than that to which they are entitled under the law.

114.    Based on the foregoing, the Hospitals are entitled to an order declaring the Secretary's issuance of CMS Ruling 1498-R to be unlawful and/or for a writ of mandamus requiring the Secretary to withdraw the Ruling.

**COUNT IV: MANDAMUS TO PRODUCE SSI ENTITLEMENT DATA**

115.    All of the foregoing allegations are incorporated as if fully set forth herein.

116.    The Secretary also has a non-discretionary duty to provide access to SSI entitlement data so that the provider can compute its own SSI/Medicare Fraction.  Section 951 of the Medicare Prescription Drug, Improvement and Modernization Act (MMA) of 2003, Pub. L. No. 108-173 (2003) required HHS to arrange by December 8, 2004, to furnish hospitals with the data necessary to compute the number of patient days used in

calculating the DPP. There are no legal remedies available to the Hospitals to compel disclosure by the Secretary of the data falling within the purview of Section 951 of the MMA. Accordingly, there being no remedy at law the Hospitals are entitled to a writ of mandamus pursuant to 28 U.S.C. §1361, directing the Secretary to furnish to the Hospitals such data as is required so that Hospital may compute its own SSI/Medicare Fraction.

## PRAYER FOR RELIEF

WHEREFORE, the Hospitals pray for an Order:

A. Declaring invalid and setting aside the provisions of Ruling 1498-R that declare that the PRRB lacks jurisdiction over, and require the PRRB to remand, the Hospitals' claims in their appeals to the PRRB to have their Medicare Part A/SSI fraction calculated correctly, in accordance with this Court's decision in *Baystate Medical Center v. Leavitt;*

B. Declaring invalid and setting aside the CMS Administrator's determination in Ruling 1498-R that Medicare eligible and Medicare part C days for patients who were not entitled to have Medicare part A payments made on their behalf for those days should be included in the Medicare Part A/SSI fraction and excluded from the Medicaid fraction;

C. Requiring the Secretary to recalculate the Hospitals' DSH payments for the cost reporting periods at issue by recalculating the Hospitals' Medicare Part A/SSI fractions in accordance with this Court's decision in *Baystate Medical Center v. Leavitt,* ordering the Secretary to exclude Medicare eligible and Medicare part C days from her recalculation of the Medicare Part A/SSI fractions for all years at issue, and to include those days for patient who are also eligible for Medicaid in the numerator of the Medicaid fraction, and requiring the Secretary to promptly pay the Hospitals the

additional DSH payments due as a result of that correction, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

D.        Alternatively, issuing a writ of mandamus under the authority of 42 U.S.C. § 1361 requiring the Secretary to retroactively withdraw CMS Ruling 1498-R and to restore and maintain the Hospitals' appeals before the PRRB to conduct proceedings consistent with the order (1) requiring the Hospitals' Medicare Part A/SSI fraction to be calculated correctly, in accordance with this Court's decision in *Baystate Medical Center v. Leavitt* and (2) Declaring invalid and setting aside the CMS Administrator's determination in Ruling 1498-R that Medicare eligible and Medicare part C days for patients who were not entitled to have Medicare part A payments made on their behalf for those days should be included in the Medicare Part A/SSI fraction and excluded from the Medicaid fraction;

E.        Directing the Secretary to provide such additional data so as to enable the Hospitals to compute their own SSI/Medicare Fractions;

F.        Awarding the legal fees and costs of this suit incurred by the Hospitals;

G.        Awarding the Hospitals interest as required by 42 U.S.C. §1395oo(f)(2); and

H.        Granting such other and further relief as the Court may deem just and proper under the circumstances.

Respectfully Submitted,

  /s/
Kenneth R. Marcus
D.C. Bar No. MI-0016
HONIGMAN MILLER SCHWARTZ AND COHN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226
Telephone:     (313) 465-7470
Facsimile:     (313) 465 7471
E mail: kmarcus@hongiman.com
Attorney for Plaintiffs

Dated: November 16, 2015